UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

LEONID FELLER and
LISA FELLER,

      Plaintiffs,                                CASE NO. 10-12590
                                              HON. LAWRENCE P. ZATKOFF
v.

TOWNSHIP OF WEST BLOOMFIELD,
BILL BAUER, ERIK BEAUCHAMP,
JOHN RODA, MARSHALL LABADIE
and STEVE BURNS,

      Defendants.
_____/

**OPINION AND ORDER**

AT A SESSION of said Court, held in the United States Courthouse,
in the City of Port Huron, State of Michigan, on February 10, 2010

PRESENT: THE HONORABLE LAWRENCE P. ZATKOFF
UNITED STATES DISTRICT JUDGE

**I. INTRODUCTION**

This matter is before the Court on Plaintiffs' Motion for Partial Summary Judgment on Count I - Warrantless Searches (the "Motion") (Docket #9). Defendants filed a response, to which Plaintiffs replied. The Court finds that the facts and legal arguments pertinent to the Motion are adequately presented in the parties' papers, and the decision process will not be aided by oral arguments. Therefore, pursuant to E.D. Mich. L.R. 7.1(f)(2), it is hereby ORDERED that the Motion be resolved on the briefs submitted, without this Court entertaining oral arguments. For the reasons that follow, Plaintiffs' Motion is GRANTED.

## II. BACKGROUND

Plaintiffs own a home and property in Defendant West Bloomfield Township (the "Township"). Behind their home, they have had a grass lawn for years. Prior to 2009, the lawn extended for a certain distance before the grass lawn yielded to cattails and other vegetation. Then, at some point beyond the cattails and other vegetation, Moon Lake begins. In the spring/summer of 2009, Plaintiffs cut down some of the cattails and other vegetation and seeded the cleared area to increase the size of their grass lawn.

In Count I of their Complaint, Plaintiffs allege that Defendants violated Plaintiffs' Fourth Amendment right to be free from warrantless searches. Plaintiffs allege that, on more than one occasion, a Township official entered onto Plaintiffs' property, without a search warrant, to investigate reports of alleged violations of the Township Ordinance. In fact, Defendants admit that:

> . . . Township employees did enter the back yard of [Plaintiffs'] property, [but] it was not to investigate or search for evidence of a violation. It was to post notices to stop illegal work that had already been confirmed to exist by observations from a public area in which the Plaintiffs could have not [sic] reasonable expectation of privacy as a matter of law. With such reasonable cause to believe violations existed, the State Wetlands Protection Act and Township Ordinance patterned after it [the State Wetlands Protection Act] allowed the Township discretion to enter onto Plaintiffs' property.

Defendants Response, at 6.

Defendants describe the first of two admitted instances of entering on Plaintiffs' property as follows:[1]

---

[1] Plaintiffs contend that there were three warrantless entries by Defendants in 2009 (on July 29, July 30 and December 7). For purposes of determining that Defendants entered Plaintiffs' property without a search warrant, however, the Court need not decide whether there was a separate entry by Defendant Bill Bauer on July 30, 2010.

> On July 29, 2009, the Township Code Enforcement Division, received a phone report of construction work in the rear yards of two homes on Strathdale Lane. Investigation of the complaint was assigned to [Defendant William J. Bauer ("Bauer")], a Township Code Enforcement Officer, who . . . identified [Plaintiffs'] property as one of the reported construction sites based on commercial equipment parked in the driveway, and upon taking only several steps up the driveway, was able to see Moon Lake, cut wetland vegetation and fresh disruption of the area known to be protected wetland and related environmental features setback area. Those observations were made from within the public road right-of-way for Strathdale Lane, as well as from the next 18 feet of public utility area. After returning to his vehicle to call and confirm whether a permit existed for the work he had observed [no such permit existed], Bauer went back up the driveway to post a Notice on the garage and went to the back of the property where the already observed illegal work had occurred and posted two stop work orders.

Defendants Response, at 2-3. As to the second acknowledged entry upon Plaintiffs' property (by Township employee Erik Beauchamp, on December 7, 2009), Defendants state that the purpose of that entry was "to investigate a claimed violation of that stop work order for activity in and observable from the same locations [presumably, a previously mentioned 'public vantage point']." Defendants Response, at 8.

### III.  LEGAL STANDARD

As recently stated by the Sixth Circuit:

> Summary judgment is proper where no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c)(2). In considering a motion for summary judgment, we must draw all reasonable inferences in favor of the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). The central issue is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986).

*Spees v. James Marine, Inc.*, 617 F.3d 380, 388 (6th Cir. 2010).

## IV.  ANALYSIS

**A.     The Clearly Established and Applicable Law**

A warrantless search is "per se unreasonable under the Fourth Amendment – subject to only a few specifically established and well-delineated exceptions." *Katz v. United States*, 389 U.S. 347, 357 (1967).   Some of the "established and well-delineated exceptions" are: consent to enter the property, exigent circumstances that make it impracticable to get a search warrant, and a search incident to arrest or a *Terry* stop. *Id.* at 357-58; *United States v. Pearce*, 531 F.3d 374, 379-80 (6th Cir. 2008).

In their Motion, Plaintiffs rely heavily - and appropriately - on a Sixth Circuit decision rendered on July 3, 2008, *i.e.*, over one year prior to the first time a Township employee made a warrantless entry upon Plaintiffs' property.  *See Jacob v. Township of West Bloomfield*, 531 F.3d 385 (6th Cir. 2008).  For the sake of being clear, the municipal defendant in *Jacob* was the same municipal defendant as in the instant case, *i.e.*, the Township.  Therefore, even assuming the Township and its enforcement officials were not aware of clearly established Fourth Amendment law prohibiting warrantless searches of property (as set forth in the preceding paragraph) prior to the issuance of the *Jacob* opinion, the Township - and its officials, particularly its ordinance enforcement officials - cannot argue in good faith that they did not know the clearly established law of *Jacobs*.

In *Jacobs*, in the words of Defendants themselves, the Township and two of its code enforcement officers were sued by a resident of the Township when:

4

> [T]he Township code enforcement officer entered the plaintiff's back yard to investigate violations of the Township's Zoning Ordinance and Property Maintenance Code. The plaintiff had been allowing inoperable vehicles and "junk" to essentially litter the property. After misdemeanor charges were brought against the plaintiff, the plaintiff pleaded guilty, and after failing to clean up the property, the plaintiff served thirty days in jail on the charges. While the plaintiff was serving time in jail, and after his release, the Township code enforcement officer continued to inspect the property for violations of the Township's Zoning Ordinance and Property Maintenance Code. The plaintiff then filed suit under Section 1983, alleging that the code enforcement officer violated the Plaintiff's Fourth Amendment rights when the officer entered onto the plaintiff's property to search without a warrant.
>
> The Court . . . reviewed the searches occurring after the plaintiff's release from jail. The Township code enforcement officer argued that he was entitled to qualified immunity with respect to the plaintiff's Fourth Amendment claims and the district court held that the code enforcement officer was not entitled to immunity. On appeal, the 6th Circuit remanded the case to the district court to determine whether the code enforcement officer's search constituted a criminal search under *Widgren v. Maple Grove Twp*, 429 F.3d 575 (6th Cir. 2005). On remand, the district court again denied qualified immunity to the code enforcement officer. On second appeal, the 6th Circuit affirmed the denial of qualified immunity.

Defendants Response, at 5-6.

In *Jacobs*, the Sixth Circuit explicitly held that "there is no question that the Fourth Amendment's protection of the intimate area surrounding Plaintiff's home was clearly established at the time of Defendant's entry upon the property [in 1999]." *Jacobs*, 531 F.3d at 392. *See also United States v. Jenkins*, 124 F.3d 768, 772 (6th Cir. 1997) ("the curtilage is considered part of the house itself for Fourth Amendment purposes"). Likewise, the Sixth Circuit ruled that the Township officer's "criminal investigation of Plaintiff's property violated the Fourth Amendment's warrant requirement" and denied qualified immunity to the individual defendant officers involved. *Id.* at 391-92.

5

**B.     Defendants' Conduct Violated Plaintiffs' Constitutional Rights**

In this case, the Court finds that, notwithstanding their arguments to the contrary, the statements of Defendants in their Response establish, as a matter of law, that Defendants violated Plaintiffs' Fourth Amendment right to be free of warrantless searches.

To begin, Defendants admit that Township employees entered the back yard of Plaintiffs' property:

> The present case is completely distinguishable from *Jacob*. Not only does it concern a blatant violation of the Township's Wetland Ordinance and state regulations governing wetlands, those violations were observed from public property before any Township employee stepped foot on Plaintiff's property. While **Township employees did enter the back yard of that property**, it was not to investigate or search for evidence of a violation. It was to post notices to stop illegal work that had already been confirmed to exist by observations from a public area in which the Plaintiffs could have not [sic] reasonable expectation of privacy as a matter of law. With such reasonable cause to believe violations existed, the State Wetlands Protection Act and Township Ordinance patterned after it [the State Wetlands Protection Act] allowed the Township discretion to enter onto Plaintiffs' property.

Defendants Response, at 6 (emphasis added). Next, it is undisputed that none of the Township employees entering onto Plaintiffs' property had a search warrant, and Defendants do not contend that an exception to the prohibition on warrantless entries was present at the time of the July 29, 2009, and December 7, 2009, entries. The Court thus turns to the reasons, as espoused by Defendants, that purportedly justify the Township officials' entry onto Plaintiffs' property on those dates.

*1.     Criminal investigation on Plaintiffs' Property*

Defendants contend that no warrant was necessary on July 29, 2009, or December 7, 2009, because when Bauer and Beauchamp entered onto Plaintiffs' property, "it was not to investigate or

6

search for evidence of a violation. It was to post notices to stop illegal work that had already been confirmed to exist by observations from a public area that Plaintiffs could have not [sic] reasonable expectation of privacy as a matter of law." The evidence and statements of the Township's officials, however, demonstrate otherwise.

According to Defendants, Bauer's July 29, 2009, entry onto Plaintiffs' property to post the Stop Work Orders occurred after Bauer:

(1) received an anonymous complaint that construction was occurring in a yard,

(2) observed commercial equipment in Plaintiffs' driveway,

(3) took two or three steps on Plaintiffs' driveway and observed "the waters of Moon Lake, recently cut vegetation between the home and Moon Lake, and bare ground that had been recently disturbed,"

(4) continued up the driveway and while "still on the driveway and the side of the house, . . . observe[d]" the size of the area of affected land,

(5) went to his vehicle to secure a Stop Work Order and confirm that no permit had been filed, and

(6) then "placed a courtesy notice of wetland violation and the need for a permit on the side garage wall or door, walked to the back of the property, within the playground park and along the property line, and posted two Stop Work Orders."

*See* Defendants Response, Exhibit 4 (Bauer Affidavit). The law is well-established that Bauer did not need a search warrant to obtain plain-view evidence from a public roadway. *See, e.g., United States v. Poole*, 407 F.3d 767, 733 (6th Cir. 2005).

Accepting as true Defendants' argument that Bauer observed all the alleged wetlands violations from a public roadway (which the Court has presumed in deciding this Motion),[2] however,

---

[2]The Court notes, however, that in his affidavit (as set forth above), Bauer actually stated that it was only "upon taking two or three steps on Plaintiffs' driveway" that he "was able to observe the waters of Moon Lake, recently cut vegetation between the home and Moon Lake,

7

the law is also well-established that Bauer did not have a right to enter Plaintiffs' property, as he admittedly did, without a warrant or consent or pursuant to some other exception to warrantless searches. Longstanding Supreme Court precedent establishes that "plain view alone is never enough" to justify a warrantless entry onto constitutionally-protected property and that:

> Incontrovertible testimony of the senses that an incriminating object is on premises belonging to a criminal suspect may establish the fullest measure of probable cause. But even where the object is contraband, this Court has repeatedly stated and enforced the basic rule that the police may not enter and make a warrantless seizure.

*Coolidge v. New Hampshire*, 403 U.S. 443, 468 (1971). Therefore, even if Bauer did observe a violation from the street, he had no right to enter onto constitutionally-protected property without a warrant. Rather, Bauer only had the right to use the information gathered from his observations while on a public street to *obtain a search warrant* if he wanted to enter Plaintiffs' property in furtherance of his investigation. *See O'Connor v. Ortega*, 480 U.S. 709, 720 (1987) ("[I]t is well settled . . . that 'except in certain carefully defined classes of cases, a search of private property without proper consent is 'unreasonable' unless it has been authorized by a valid search warrant.'") (quoting *Mancusi v. DeForte*, 392 U.S. 364, 370 (1968)). *See also, Jacob*, 531 F.3d at 392.[3]

---

and bare ground that had been recently disturbed." Based on that averment, Bauer did not observe the alleged wetlands violations while on the public road but, rather, only observed the alleged wetlands violations after entering onto Plaintiffs' property (*i.e.*, Plaintiffs' driveway).

[3]Although not necessary to the Court's ruling, the Court also notes that Bauer did not simply enter onto Plaintiffs' property to post the Stop Work Orders on July 29, 2009. First, as discussed in footnote 2, *supra*, Bauer states that he did not observe the alleged wetlands violations until he took two or three steps onto Plaintiffs' driveway. Second, in an affidavit of Plaintiff Leonid Feller ("Mr. Feller") that was attached to Plaintiffs' Motion, Mr. Feller discussed several photographs of the cleared, filled and seeded area that were taken by Bauer on July 29, 2009. There is no dispute that the Township provided the photographs to Plaintiffs. In his affidavit, Mr. Feller avers that Bauer could not have taken one or more of those photographs from anywhere but on Plaintiffs' property (specifically, the Plaintiffs' back yard). Neither

8

As to the December 7, 2009, entry by Beauchamp, Defendants admit that the purpose of that entry was "to investigate a claimed violation of that stop work order for activity in and observable from the same locations." Defendants Response, at 8. Therefore, with respect to the December 7, 2009, entry, it is undisputed that Beauchamp entered Plaintiffs' property, without a warrant or consent and not pursuant to any other exception to warrantless entry, for purposes of investigating a crime.

The warrantless entries onto Plaintiffs' property were not without the threat of significant repercussions to Plaintiffs, for accompanying each entry was the possibility of criminal sanctions. This threat was made very real when the Township issued a citation for misdemeanor violations of the Township Ordinance, convictions on any of which would have subjected Plaintiff Leonid Feller to a term of imprisonment. In addition, the Court finds that Bauer and Beauchamp did not search Plaintiffs' property as part of a "routine inspection that is part of a periodic or area inspection plan[;]" rather, the Township officials specifically targeted their investigations at Plaintiffs after receiving complaints about the conditions of Plaintiffs' property. *Jacob*, 531 F.3d at 391 (quoting *Widgren v. Maple Grove Township*, 429 F.3d 575, 584 (6th Cir. 2005)).

Defendants also argue that the present case does not require a determination of whether Plaintiffs' property is considered part of the "curtilage." In Defendants' view, the present case only:

> concerns regulated wetland and environmental features setback areas, which are specifically and specially regulated. Plaintiffs do not have an unregulated property interest in the wetland areas on and near their

---

Bauer's affidavit nor Defendants' Response dispute (or, for that matter, even address) Mr. Feller's averment that the photographs were taken: (1) by Bauer, (2) on July 29, 2009, or (3) while Bauer was on Plaintiffs' property. The photographs establish that Bauer's investigation was not limited to the time when he was on the public road, but rather that he continued his investigation regarding the cleared, filled and seeded area while on Plaintiffs' property.

9

> property. Similarly, they have no legal right to any expectation of privacy in the lawn and driveway areas in front of their home that are within the public road right-of-way from where the violations were observed. The same lack of legal right applies to the next 18 feet of their lawn and driveway, which although at least owned by them, is subject to a public utility easement.[4]

Even if the Court accepts as true Defendants' apparent suggestion that the wetlands and environmental features setback areas are not part of Plaintiffs' property, Defendants' argument ignores the fact that Bauer and Beauchamp entered onto and traversed Plaintiffs' property for the purpose of investigating whether criminal activity had occurred.[5] Defendants do not argue, nor could they in good faith, that Plaintiffs' back yard, the property upon which Bauer and Beauchamp entered on July 29, 2009, and December 7, 2009, respectively, did not constitute part of the curtilage of Plaintiffs' home. *See Daughenbaugh v. City of Tiffin*, 150 F.3d 594, 603 (6th Cir. 1998) ("the law seems relatively unambiguous that a backyard abutting the home constitutes curtilage and receives constitutional protection").

Accordingly, the Court concludes that Bauer and Beauchamp entered the curtilage of Plaintiffs' property on July 29, 2009, and December 7, 2009, respectively, without a warrant, for the purpose of investigating criminal activity.

  2.  *State and Local Law Do Not Trump the United States Constitution*

Defendants argue that the Michigan Wetlands Protection Act, M.C.L. § 324.30301 *et seq*.

---

[4] Defendants cited no authority in support of their argument that, just because there is a public utility easement, governmental officials also have a right to enter onto a citizen's property - which is, without question, within the curtilage.

[5] As the posted Stop Work Orders and misdemeanor citation issued by the Township officials demonstrate, such officials believed that Plaintiffs (or at least Plaintiff Leonid Feller) committed the criminal activity.

(the "Act"), and the Township Ordinance patterned after the Act, "allowed the Township discretion to enter onto Plaintiffs' property." Specifically, Defendants rely on Section 12-11 of the Township's Code of Ordinances, which is based on and was enacted pursuant to the Act (specifically M.C.L. §§ 324.30308 and 324.30314). Section 12-11 of the Township Ordinance provides, in part, that:

> the township board, its agents, surveyors and other employees of the township, **may make reasonable entry** upon land and waters within the township for the purposes of making any investigation, survey or study contemplated by this chapter.

In fact, at one point, Defendants actually state that "the code enforcement officers were **constitutionally** authorized to enter Plaintiffs' rear yard upon the reasonable cause they had to believe that a wetlands violation existed."

Defendants cite no authority whatsoever in support of the constitutionality of Section 12-11 of the Township Ordinance, as written, nor do Defendants' offer any authority to support of their representation that Bauer and Beauchamp were "constitutionally authorized" to enter Plaintiffs' property. In fact, the Court is astounded by Defendants' arguments, as they completely ignore the clearly established principle that a municipal ordinance must conform to the United States Constitution. *See, e.g., Berger v. City of Mayfield Heights*, 154 F.3d 621, 626 (6th Cir. 1998). Moreover, Defendants' argument suggests that they do not understand that, when the Sixth Circuit decided *Jacob* in 2008, the Sixth Circuit rejected the argument of one of the Township officials that he was entitled to qualified immunity, in part, because he acted pursuant to another provision of the Township Ordinance. As the *Jacob* court stated: "Indeed, the Supreme Court's longstanding precedents show that it was clearly established at the time of Defendant[s'] intrusion onto Plaintiff[s'] land that such a criminal investigation is constrained by the Fourth Amendment's warrant requirement." *Id.* at 392 (citations omitted).

Accordingly, the Court rejects, as wholly unsupportable, Defendants' arguments that: (a) Bauer and Beauchamp were constitutionally authorized to enter Plaintiffs' property, and (b) the Township's officials could ignore the clearly established law regarding Fourth Amendment searches simply because a Michigan statute or a section of the Township Ordinance provided otherwise.

### 3. *No Qualified Immunity for Bauer or Beauchamp*

Defendants assert that Bauer and Beauchamp are entitled to qualified immunity on Plaintiffs' Count I claim that Defendants violated their Fourth and Fourteenth Amendment rights. In reviewing claims for qualified immunity, the Sixth Circuit has applied a three-step inquiry:

> First, we determine whether, based on the applicable law, the facts reviewed in a light most favorable to plaintiff . . . show that a constitutional violation has occurred. Second, we consider whether the violation involved a clearly established right of which a reasonable person would have known. Third, we determine whether the plaintiff has offered sufficient evidence to indicate that what the official allegedly did was objectively unreasonable in light of the clearly established constitutional rights.

*Dunn v. Matatall*, 549 F.3d 348, 352-53 (6th Cir. 2008) (citations omitted).

In this case, as discussed above, (a) Plaintiffs' constitutional rights were violated when Bauer and Beauchamp entered onto Plaintiffs' property without search warrants, and (b) the violations involved a clearly established right of which a reasonable person would have known. In addition, Plaintiffs have clearly demonstrated that the actions of Bauer and Beauchamp, on behalf of and at the behest of the Township, were objectively unreasonable based on: (1) long-standing Supreme Court precedent, and (2) a Sixth Circuit case decided in 2008, one year before the actions in this case commenced, where the Sixth Circuit denied qualified immunity to the Township's officials for conduct that was essentially the same as the conduct of Bauer and Beauchamp on July 29, 2009, and December 7, 2009, respectively. Accordingly, the Court concludes that no reasonably competent

12

officer in the position of Bauer or Beauchamp would have concluded that his actions were constitutional, *Malley v. Briggs*, 475 U.S. 335, 341 (1986), and neither Bauer nor Beauchamp is entitled to qualified immunity with respect to his entry onto Plaintiffs' property on July 29, 2009, and December 7, 2009, respectively.

   *4.  The Township is Liable*

Defendants summarily argue that, because the individual defendants are not liable, the Township cannot be liable. As Bauer and Beauchamp are liable, however, this argument necessarily fails. Defendants also argue that the Township cannot be held vicariously liable for actions of its individual officers and that there is no unconstitutional Township policy that was the moving force behind Plaintiffs' alleged violations. *See Canton v. Harris*, 489 U.S. 378, 389 (1989) (a municipality can be liable under 42 U.S.C. § 1983 only where its policies are the "moving force behind the constitutional violation"). Despite those assertions, however, Defendants immediately defend their actions by: (a) reference to the Act and Township Ordinance Section 12-11, and (b) again maintaining that the Township is insulated from liability for violation of Plaintiffs' constitutional rights because the actions were taken in accordance with the Township Ordinance provisions that are authorized by state law. Thus, as Defendants' defense reveals, it is the Township Ordinance (*i.e.*, policy) pursuant to which Bauer and Beauchamp acted. Moreover, as the affidavit of Bauer and an email sent to Beauchamp by another Township official demonstrate, both Bauer and Beauchamp went to Plaintiffs' property to investigate at the direction of the Township. For the foregoing reasons, the Court finds that the Township's policies were, indisputably, the moving force behind the Fourth and Fourteenth Amendment violations against Plaintiffs.

Accordingly, the Court concludes that the Township is, as a matter of law, liable for the violation of Plaintiffs' Fourth and Fourteenth Amendment rights.

   *5.  Conclusion*

For the foregoing reasons, the Court finds that there is no genuine issue of material fact that

both Bauer and Beauchamp made entry onto Plaintiffs' property and that, when they did so, they were acting: (1) in their capacity as Township officials, (2) on behalf of the Township and at the direction of the Township's officials, and (3) pursuant to the Township's Ordinance (policy). The Court further finds that there is no genuine issue of material fact that both Bauer and Beauchamp entered onto Plaintiffs' property: (a) without a search warrant or consent, (b) in the absence of any other constitutionally-permissible reason, (c) for the purpose of investigating criminal activity. Accordingly, the Court holds that, as a matter of law, the Township, Bauer and Beachamp are liable for violating Plaintiffs' rights under the Fourth and Fourteenth Amendments to the United States Constitution.

## V. CONCLUSION

Accordingly, and for the reasons set forth above, the Court GRANTS Plaintiffs' Motion for Partial Summary Judgment on Count I - Warrantless Searches (Docket #9).

IT IS SO ORDERED.

S/Lawrence P. Zatkoff
LAWRENCE P. ZATKOFF
UNITED STATES DISTRICT JUDGE

Dated: February 10, 2011

## CERTIFICATE OF SERVICE

The undersigned certifies that a copy of this Order was served upon the attorneys of record by electronic or U.S. mail on February 10, 2011.

S/Marie E. Verlinde
Case Manager
(810) 984-3290

14